# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BILLY HAUN, )<br>)<br>Defendant. ) | No. 3:20-CR-024-PLR-DCP |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on Defendant Haun's Motion to Set Detention Hearing and for Release on Conditions [Doc. 23], filed on March 23, 2020. Defendant requests release prior to trial, arguing that his age and underlying medical issues result in a high risk of infection and death from potential exposure to the COVID-19 virus.

The Court held a detention hearing via telephone on March 30, 2020. Attorney Michael Cabage appeared on behalf of Defendant, while Assistant United States Attorney Alan Kirk appeared on behalf of the Government. Following the hearing, Defendant filed a post-hearing brief on April 2, 2020 [Doc. 27], while the Government filed their post-hearing brief on April 3, 2020 [Doc. 29].

In consideration of releasing the Defendant pending trial, the Court has weighed the factors set forth in 18 U.S.C. § 3142(g) and finds that the arguments presented at the detention hearing, as well as the Pretrial Services Report ("PSR"), establish by clear and convincing evidence that the Defendant is a danger to the community, as well as by a preponderance of the evidence that no

condition or combination of conditions of release will reasonably assure the Defendant's appearance as required. Additionally, the undersigned finds that Defendant has failed to show a specific threat of serious complications from contracting COVID-19. Accordingly, Defendant is **ORDERED DETAINED** pending further proceedings in this case.

I.  ANALYSIS

Defendant is charged [Doc. 3] with conspiracy to distribute fifty grams or more of methamphetamine, in violation of 18 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), as well as conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Defendant signed a waiver of a detention hearing on March 9, 2020 [Doc. 18], and the Court subsequently entered an Order of Detention [Doc. 19].

Defendant now moves [Doc. 23] for release, arguing that he is not a flight risk or a danger to the community, and that he faces a high risk of infection and death resulting from potential exposure to the COVID-19 virus because of his age and underlying medical issues. Defendant proposes to live at his residence at 238 Farmers Hollow Road, Clinton, TN, as well as being required to seek drug counseling and submit himself for regular, random drug screening. Further, Defendant notes that if he was released before thirty days of incarceration, his supplemental social security disability benefits would not be terminated. In his post-hearing brief [Doc. 27], Defendant submits that he would be able to obtain mental health and substance abuse treatment through Ridgeview Behavioral Health Services. Defendant relates that "[d]ue to the COVID outbreak, Ridgeview is currently doing open access intakes every day of the week." [*Id.* at 1].

Under the Bail Reform Act, the Court must determine "whether there are conditions of release that will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the community[.]" 18 U.S.C § 3142(g). In making this determination, the

Court must consider the available information relating to (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the Defendant, (3) the Defendant's history and characteristics, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [Defendant's] release." 18 U.S.C § 3142(g)(1)-(4).

Additionally, in an April 6, 2020 Memorandum, United States Attorney General William Barr stated that "the current COVID-19 pandemic requires that we also ensure we are giving appropriate weight to the potential risks facing certain individuals from being remanded to federal custody." *See* Memorandum for All Heads of Department Components and All United States Attorneys, *Litigating Pre-Trial Detention Issues During the COVID-19 Pandemic*, April 6, 2020, *available at* https://www.justice.gov/file/1266901/download. The Court will first address the respective section 3142(g) factors and then analyze Defendant's specific arguments related to the COVID-19 virus.

### A. Section 3142(g) Factors

First, the Court finds that the nature and circumstances of the offense charged argues in favor of detention. 18 U.S.C. § 3142(g)(1). As the Court previously detailed, Defendant is charged [Doc. 3] with conspiracy to distribute fifty grams or more of methamphetamine, in violation of 18 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). While the parties did not present extensive details on the nature of the charged offenses at the detention hearing, this charge creates a rebuttable presumption that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3).

Second, the weight of the evidence of the Defendant's dangerousness argues in favor of detention. 18 U.S.C. § 3142(g)(2). In *United States v. Stone*, the Sixth Circuit clarified that the weight of the evidence against the defendant "goes to the weight of the evidence of dangerousness,

not the weight of the evidence of the defendant's guilt." 608 F.3d at 948. Further, the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Id.* at 947 n.6. Therefore, the Court finds that this factor weighs in favor of detention.

Next, the Court must consider a host of factors in regard to the history and characteristics of the Defendant, which factors the Court also finds weigh in favor of detention. 18 U.S.C. § 3142(g)(3)(A). Here, the Court notes Defendant's long-standing residence in the District, and strong family ties to the region—through both his adult children, as well as his cousin and his cousin's spouse who live with Defendant at his residence. However, the Court also considers Defendant's extensive criminal history. In considering these factors, the Court may also consider both actual convictions and mere arrests or charges to assess the Defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention. *United States v. Tolbert*, Nos. 3:09CR56 & 3:10CR30, 2017 WL 6003075, at \*5 (E.D. Tenn. Dec. 4, 2017) (citations omitted). The PSR details Defendant's multiple arrests and convictions from 1982 through 2002, including for larceny, theft, public intoxication, driving under the influence, being a habitual traffic offender, and possession of drug paraphernalia. More troubling to the Court, however, is Defendant's arrest for domestic assault on May 28, 2014 and drug-related charges on November 1, 2015. Further, Defendant has three previous violations of his state probation, as well as a failure to appear in the Anderson County Sessions Court.

The Court also notes that Attorney General Barr detailed that "the medical risks associated with individuals being remanded into federal custody during the COVID-19 pandemic" should be considered as a part of the defendant's "physical and mental condition." *See* Memorandum for All Heads of Department Components and All United States Attorneys, *Litigating Pre-Trial*

*Detention Issues During the COVID-19 Pandemic*, April 6, 2020, *available at* https://www.justice.gov/file/1266901/download. Here, the Court relies upon its subsequent analysis of the specific arguments under COVID-19 in the following section. While Defendant states that he suffers from COPD and emphysema, the Court finds that Defendant has failed to set forth a specific risk of exposure and that the measures in place during his detention are sufficient to mitigate any such risk.

Finally, under the pertinent part of 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." In addition to Defendant's criminal history, the Court notes his status as a habitual traffic offender, numerous arrests for public intoxication, and pending January 9, 2020 charges for driving on a suspended license. With regard to Defendant's substance abuse history, the PSR details that Defendant reported using methamphetamine once every two-to-three days and his urine screen upon arrest was positive for methamphetamine. The United States Probation Office has recommended that the Defendant be detained largely due to the Defendant's criminal history, risk of flight, substance abuse history, and prior revocations while under supervision. Accordingly, the Court finds that there are no conditions sufficient to address the concern for danger that the Defendant poses to the community or serious risk of flight.

    **B.**    **Effect of COVID-19**

Much of Defendant's argument for release is due to the potential effect of the COVID-19 virus while detained. Here, the Court will adopt the reasoning of the Eastern District of Michigan and evaluate "the impact of COVID-19 on the pretrial release calculus . . . [under] the following four factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*United States v. Terry Pruitt*, No. 17-CR-20183-4, 2020 WL 1698661, at *6 (E.D. Mich. Apr. 8, 2020) (citing *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *2 (D. Kan. Mar. 25, 2020)). Although the defendant in *Pruitt* sought temporary release pursuant to 18 U.S.C. § 3142(i), the Eastern District of Michigan found that "[a]lthough these factors have been applied in the context of motions for release under 18 U.S.C. § 3142(i)[1], they are nevertheless relevant under the present procedural posture." *Id.* (addressing where the defendant originally consented to detention before seeking pretrial release).

Defendant is currently detained at the Roger D. Wilson Detention Facility in Knox County, Tennessee. *See* [Doc. 29]. The Court is sympathetic to Defendant's concerns and acknowledges the unprecedented nature of COVID-19 pandemic and its effect nationwide and within Tennessee. "[A]s acknowledged by the Centers for Disease Control and Prevention ("CDC"), incarcerated individuals face an even greater risk of transmission, given the conditions frequently present in correctional and detention facilities." *Pruitt*, 2020 WL 1698661, at *6 (citing *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020)). "These conditions include, among other things, the highly congregational environment, the limited ability of incarcerated persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing), and potentially limited onsite healthcare services. *Id.*

---

[1] Under 18 U.S.C. § 3142(i), the Court may "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."

However, "a defendant should not be entitled to temporary release . . . based solely on generalized COVID-19 fears and speculation." *Clark*, 2020 WL 1446895 at *3. Instead, "the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary[.]" *Id.*; *see, e.g.*, *Pruitt*, 2020 WL 1698661 at *6 ("While the generalized risks of COVID-19 cannot be disputed, courts evaluating whether pretrial release is necessary must evaluate the particularized risks posed to an individual defendant.") (citing *United States v. Lee*, No. 19-20112, 2020 WL 1540207, at *3 (E.D. Mich. Mar. 30, 2020)).

First, as discussed above, the § 3142(g) factors demonstrate that Defendant presents a danger to the community and a risk of flight, and that no condition or combination of conditions would reasonably assure the safety of the community and his appearance in court. This factor weighs decidedly in favor of Defendant's continued detention.

Next, the Court considers Defendant's specific COVID-19 concerns. Defendant states that he is 56 years old and lists his current medical conditions as emphysema and COPD. The PSR states that Defendant reported that he suffers from chronic back and left ankle pain due to a car wreck twenty-five years ago, as well as COPD. While Defendant did not provide further information on his condition and treatment for these illnesses, the Court acknowledges that Defendant's age and medical conditions "may place Defendant in a category of persons with a heightened risk if infected with COVID-19." *See United States v. Patino*, No. 18-CR-20451, 2020 WL 1676766, at *5 (E.D. Mich. Apr. 6, 2020)

However, the Court also considers the measures in place to mitigate exposure to the virus in place at the Roger D. Wilson Detention Facility ("the detention facility"). The Government noted in its post-hearing brief [Doc. 29] the steps taken to ensure the safety of the inmate

population, staff, and visitors. First, in-person visitation is no longer allowed at the detention facility, and in response to the pandemic, inmates are allowed one free video teleconference visitation per week for all inmates and a reduced cost of ten cents per minute for video teleconferencing visitations. Additionally, the detention facility is implementing encrypted video teleconferencing for defense counsel and inmates, and the Government states that encrypted video teleconferencing service for legal consultations will be available soon. Further, the detention facility has created legal visitation rooms with glass partitions to protect inmates against potential exposure from defense counsel.

The Government also detailed that the detention facility is screening for symptoms and risk factors for all inmates, staff, visitors, and vendors. The detention facility staff is following the CDC protocols on COVID-19, as staff, visitors, and vendors undergo temperature checks and screening upon arrival to the detention facility. Additionally, the Government reported that the detention facility does not have any known cases of COVID-19, and as of the date of filing, there were twenty-two inmates within the facility who reported a symptom associated with COVID-19. However, the Government noted that these inmates were isolated from the general population and that isolated inmates undergo observation and screening by medical personnel. Twenty inmates at the facility have been tested for COVID-19, with eighteen inmates testing negative for COVID-19 and the detention facility is awaiting the results of two tests.

Lastly, the Government detailed that the Knox County Criminal Judges, the District Attorney, and the Knox County Sheriff's Office have significantly reduced the overall population of inmates within Knox County detention facilities. Together with the overall reduction of the inmate population in Knox County, the detention facility has a population of 764 inmates and a total bed space for 1,026 inmates, as of April 1, 2020. The Government also provided the standing

order of the Sixth Judicial District of Tennessee from March 30, 2020, which shows the steps being taken by Knox County state courts to reduce the inmate population and mitigate the spread of COVID-19.

Ultimately, the Court finds that the Government has appropriately detailed the measures in place at the detention facility to mitigate the risk of exposure and spread of COVID-19. "The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify his release." *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020). Defendant has only put forth a generalized risk of contracting the COVID-19 virus and has failed to demonstrate how the measures in place at the detention facility are insufficient.

Defendant has also failed to provide how the proposed conditions of release were tailored to mitigate or exacerbate other COVID-19 risks to him. Defendant does not identify any precautions taken with respect to the proposed treatment at Ridgeview Behavioral Health Services, including whether he would be undergoing inpatient or outpatient substance abuse therapy. Additionally, although Defendant proposes to reside at his residence, together with his cousin and his cousin's spouse, he does not "identify any COVID-19 precautions being implemented there." *Pruitt*, 2020 WL 1698661 at *7 (citing *Smoot*, 2020 WL 1501810, at *3. Even if Defendant was ordered to be released to home confinement, the lack of proposed precautions in place "exacerbate[s] Defendant's COVID-19 risks were he to be released." *Smoot*, 2020 WL 1501810, at *3. Meanwhile, access to the detention facility "is both extremely limited and strictly enforced," which would minimize Defendant's COVID-19 exposure. *Id.* Accordingly, this factor weighs in favor of detention.

Lastly, Defendant's proposed conditions of release would increase the risk to others of contracting COVID-19. "A defendant who is unable to comply with conditions of release poses

potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *Clark*, 2020 WL 1446895, at *7. Here, the Court has already detailed that Defendant poses a risk of flight, as well as a danger to the community. Defendant also has a previous history of failing to abide by conditions of probation, therefore the Court cannot ensure that he would abide by the current conditions of release. *See Pruitt*, 2020 WL 1698661 at *7 ("Pruitt's history of probation violation and nonappearance renders these concerns all the more troubling."); *Smoot*, 2020 WL 1501810 at *3 ("Most importantly, however, Defendant's extensive criminal history establishes that he has 'been unable or unwilling to remain law-abiding for most of his adult life;' hence, the Court 'has no reason to believe that he would suddenly become compliant now.'") (quoting *Clark*, 2020 WL 1446895 at *7). The Court also notes the enhanced personal risk to the probation officers assigned to supervise Defendant, in connection with his previous history of non-compliance. *See, e.g.*, *United States v. Aiad-Toss*, No. 19-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020). Therefore, this factor also weighs in favor of Defendant's continued detention.

## II.  CONCLUSION

Ultimately, an examination of specific factors related to Defendant's individualized risk of contracting the COVID-19 virus does not establish that Defendant's pretrial release is warranted. Further, the Government has proven by clear and convincing evidence that Defendant presents a danger to the community and by a preponderance of the evidence that he is a risk of flight, and that no condition or combination of conditions could reasonably assure the safety the community

and his appearance in court. Accordingly, Defendant is **ORDERED DETAINED** pending further proceedings in this case.

    **IT IS SO ORDERED.**

                                ENTER:

                                _____
                                Debra C. Poplin
                                United States Magistrate Judge